[No. 13753. Department One. January 15, 1918.]

PARKER ELLIS, *Appellant*, v. J. L. E. McCOY *et al.*, *Respondents*.[1]

LIS PENDENS—EFFECT OF FILING—INNOCENT PURCHASERS — PRIOR CONVEYANCE SUBSEQUENTLY RECORDED. Where a *lis pendens* in an action to quiet title is filed after the defendants had conveyed the property to an innocent purchaser, who subsequently filed the deed, judgment quieting the title in the plaintiff has the effect of cutting off the rights of the purchaser, in view of Rem. Code, § 243, which provides that, from the time of filing notice of *lis pendens*, the pendency of the action shall be constructive notice to a purchaser, and every person whose conveyance is subsequently executed or subsequently recorded shall be deemed a subsequent purchaser "to the same extent as if he were a party to the action;" the meaning being that he is bound by the judgment rendered and not merely by the judgment that might have been rendered had he appeared and defended.

Appeal from a judgment of the superior court for King county, Frater, J., entered June 9, 1916, upon findings in

[1]Reported in 169 Pac. 973.

favor of the defendants, in an action to quiet title, tried to the court.   Affirmed.

*Peters & Powell*, for appellant.

*George F. Hannan*, for respondents.

FULLERTON, J.—The appellant sued the respondents to quiet title to certain real property situated in the city of Seattle.   From a judgment dismissing his action, he appeals.

The facts are not in dispute and are, in substance, these: The property involved consists of two unoccupied city lots. On March 11, 1915, the legal title to the property stood in the name of the respondent J. L. E. McCoy.   McCoy, on that date, his wife joining in the deed, conveyed the property to one Anna S. Root, then the wife of Oliver H. Root. The conveyance was made in the consummation of a trade whereby J. L. E. McCoy and wife exchanged the property, with other Seattle property, for certain lands in Alberta, Canada, paying in addition a money consideration of $450. The money consideration was furnished by J. N. McCoy, father of J. L. E. McCoy, and the deed to the Alberta property was taken in his name.   On April 6, 1915, Parker Ellis, plaintiff in the court below and appellant here, purchased the property from Mrs. Root and her husband for an adequate consideration, taking a deed to the property.   The deed was filed for record on April 14, 1915, some eight days after its delivery.   On April 10, 1915, subsequent to the delivery of the deed to the appellant but prior to the time of its recording, the McCoys began an action against the Roots, in the superior court of King county, to rescind the trade with the Roots and to recover the money consideration paid, the action being based on the ground that the Roots had misrepresented the condition and value of the Alberta lands.   At the time of the commencement of the action, a notice of its pendency, stating the matters required by the statute, was duly filed with the county auditor.   The action

was subsequently prosecuted to a conclusion, and resulted in a judgment of date October 9, 1915, quieting title in the McCoys to the Seattle property, enjoining the Roots from asserting title thereto, and for a recovery of the cash consideration paid. Thereafter J. N. McCoy deeded the property to J. L. E. McCoy for the purpose of restoring the property to the status existing prior to the trade with the Roots.

The appellant, Ellis, had no actual notice of the pendency of the action between McCoy and the Roots until after the judgment was entered therein. Nor did the McCoys have any actual knowledge of the conveyance of the Roots to Ellis until after the entry of such judgment. Ellis first learned of the judgment about October 15, 1915, and commenced the present action on January 17, 1916.

From the foregoing recital of the facts it is at once apparent that the rights of the appellant hinge upon the effect that is given to the judgment entered in the case of the McCoys against the Roots. Since the appellant was a purchaser of the property from the Roots for value and without notice of the equities existing in favor of the McCoys, he acquired by the purchase a title thereto superior to the equities existing in favor of the McCoys, and can enforce the title so acquired against such equities if he is not estopped by the judgment mentioned. Since, furthermore, he was not made a party plaintiff or defendant in the action in which the judgment was rendered, he is not estopped as a party thereto, but is estopped, if at all, by the notice of pendency of the action filed by the plaintiff therein with the county auditor between the time he received his deed of conveyance and the time he recorded the instrument in the proper recording office.

The statute relating to notice of the pendency of an action and the effect of such a notice is found at § 243 of Rem. Code, and, so far as it is material to the question here presented, reads as follows:

"In an action affecting the title to real property the plaintiff, at the time of filing the complaint . . . may file with the auditor of each county in which the property is situated a notice of the pendency of the action, containing the names of the parties, the object of the action, and a description of the real property in that county affected thereby. From the time of the filing only shall the pendency of the action be constructive notice to a purchaser or encumbrancer of the property affected thereby, and every person whose conveyance or encumbrance is subsequently executed or *subsequently recorded* shall be deemed a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the filing of such notice *to the same extent as if he were a party to the action.* . . ." (Italics supplied.)

This section of the statute has been before this court for construction a number of times. In *Eldridge v. Stenger*, 19 Wash. 697, 54 Pac. 541, it appears that one Edward Eldridge, holding in his name the legal title to certain lands which formed a part of his donation land claim, desired to convey the same to his wife. For the accomplishment of this purpose he executed a deed of the property to his son, caused it to be recorded, and afterwards delivered it to the son with directions to convey the property to his mother. The son carried out the directions so far as to execute a deed of the property and deliver it to his mother, but for some reason the deed was not recorded until something over four years later. In the meantime the son mortgaged the property, with other lands, to one Stenger to secure an indebtedness of his own. Stenger brought foreclosure proceedings upon the mortgage, filing a notice of the pendency of the action pursuant to the statute. The action proceeded to judgment and an order of sale, whereupon Mrs. Eldridge, the mother, began an action to restrain the sale in so far as it affected the property described in her deed. The mortgagee pleaded the statute and his notice of pendency of the action filed thereunder, but the court found that he had actual notice of the deed at the time he took the mortgage, and that the judgment in the foreclosure action did not constitute a bar to

Mrs. Eldridge's right of recovery. Judge Anders, writing the opinion of the court, after quoting from the statute, used this language:

"It will be borne in mind that the notice in this instance was filed prior to the recording of appellant's deed, and it is insisted by counsel for the respondents that this statute precludes the appellant from claiming any interest in the premises in dispute. It is asserted that under the statute the plaintiff cannot occupy any attitude other than that of a subsequent purchaser, and that is manifestly true; but the provision that such subsequent purchaser shall be bound by the proceedings to the same extent as if he were a party to the action must also be considered in construing the statute. Now, conceding that Mrs. Eldridge was a subsequent purchaser, in contemplation of this statute, and bound to the same extent as if she had been a party to the action to foreclose the mortgage, what would have been the effect upon her rights had she been made a party to that action? If she had been a party and it had transpired that this mortgagee had notice of her prior unrecorded deed at the time the mortgage was executed and delivered, could it be claimed that her rights would have been destroyed and her deed held for naught? We think not. This statute seems to have been copied from the statute of New York, and we have seen none like it elsewhere, and the courts of that state have held that the title of a purchaser holding under a prior unrecorded conveyance, if made a party, could not, under such circumstances, be affected when the plaintiff at the time of filing the notice of *lis pendens* had actual or constructive notice of his rights. This question was elaborately discussed and determined in accordance with our views of the statute in the case of *Lamont v. Cheshire*, 65 N. Y. 30."

The statute was again before us in *Payson v. Jacobs*, 38 Wash. 203, 80 Pac. 429. That was an action to quiet title by a plaintiff claiming under a mortgage foreclosure sale in which a notice of the pendency of the action had been regularly filed. The defendant in the action claimed under a deed issued prior to the foreclosure sale but filed for record subsequent thereto. He was not made a party to the foreclosure action. The court allowed the title of the plaintiff

to be quieted.  In discussing the rule with reference to the statute relating to the notice of pendency of actions, it was said:

"As stated above, the correct rule is that the claimant under an unrecorded instrument is bound by the judgment of foreclosure, to the same extent, and in the same manner, as if he were a party to the action, where the *lis pendens* is filed. If the claim under the unrecorded instrument is superior and paramount to the claim of the plaintiff in the foreclosure, and the plaintiff had notice of such unrecorded instrument, the claimant under the unrecorded instrument would not be bound as a party to the action, and therefore will not be bound if not made a party, even though the *lis pendens* be filed.  But, if the claim under the unrecorded instrument is junior and inferior to the claim under the mortgage, the holder thereof is bound absolutely, because he would be so bound if made a party defendant."

*Wright v. Jessup*, 44 Wash. 618, 87 Pac. 930, was an action in ejectment.  The plaintiffs claimed title to the real property there in question through conveyances from a former holder of the legal title and from purchasers at an attachment sale.  The defendant claimed title under an action brought to foreclose a street grade assessment in which a notice of the pendency of the action was duly filed.  It appeared that certain of the grantors under whom the plaintiffs claimed held title to the property, at the time of the commencement of the foreclosure proceedings, under unrecorded instruments, and were not made parties to the proceedings.  One of the contentions of the plaintiffs was that the defendant and those under whom he claimed had notice of the unrecorded instruments, and that, in consequence, their rights were not cut off by the foreclosure.  The court held this fact immaterial, saying:

"The lien of the street grade assessment was paramount and superior to the claim of any of the parties hereto, and the judgment of foreclosure is therefore binding upon the appellants, and those under whom they claim, by reason of the notice of *lis pendens*."

In *Merrick v. Pattison*, 85 Wash. 240, 147 Pac. 1137, the plaintiff, suing as trustee of a bankrupt corporation, sought to recover certain real property as property of the corporation, the record title of which stood in the name of one of the directors of the corporation. At the time of commencing the action, a notice of its pendency was regularly filed. Prior to the commencement of the action, the property had been conveyed to a third person in satisfaction of an indebtedness owing by the corporation to such third person, but the deed had not then been filed for record. After the commencement of the action and the filing of the notice of its pendency, the holder of the deed recorded it and intervened in the action, setting up ownership of the property in virtue of the deed. He prevailed in the court below and the trustee appealed. One of the contentions of the appellant was that the commencement of the action and the filing of the notice of its pendency made his right to the property superior to the right of the holder of the unrecorded deed. Answering the contention, the court quoted the statute and used this language:

"We have italicized the words particularly relied upon by counsel for appellant, who seems to proceed upon the theory that the *lis pendens* notice had the effect of making respondents purchasers of the property, in legal effect, subsequent to and with notice of the claimed rights of appellant, for all purposes. We are unable to so view the effect of a notice of *lis pendens under this statute*. This, we think, is only a law of procedure, enacted with a view of making a decree of the nature here sought, if ultimately rendered in favor of the plaintiff, effective, not only against the original defendant in the action, but also effective against one who purchases the property or whose conveyance evidencing such purchase is recorded after the filing of the notice of pendency of the action, '*to the same extent as if he were a party to the action.*' In other words, the statute, and a notice of *lis pendens* filed in pursuance thereof, has the effect of constructively making the one claiming under such subsequently executed or recorded conveyance a party to the action. It does not follow that a decree must necessarily be rendered in favor

of the plaintiff because his notice of *lis pendens* is prior in time to the recording of a conveyance of a purchaser. Such purchaser is not thereby prevented from asserting his claimed rights as against the claims of the plaintiff and having the same determined upon the merits. Such rights may or may not be superior to those claimed by the plaintiff. The notice of *lis pendens*, as we view it, has no practical effect on the substantive rights of the respective parties, but is only a method of forcing a purchaser, under a subsequently recorded conveyance, to set up his claim of right in that action or have the decree therein, which may be rendered in favor of the plaintiff, made effective against him as well as the original defendant."

It is at once apparent that these cases announce two distinct principles; first, that the commencement of an action for the recovery of, or for the foreclosure of, a lien upon real property and the filing of a notice of pendency of the action, even though prosecuted to judgment, will not foreclose or bar the assertion of a superior outstanding unrecorded title of which the plaintiff in the action had notice; and second, that the commencement of such an action and the filing of the notice will not prevent the holder of a superior outstanding unrecorded title, of which the plaintiff in the action does not have notice, from appearing in the action and asserting such title. But it is apparent, also, that neither of these principles quite meets the question presented in the case before us. Here the respondents had an equitable interest in the land in question anterior in point of time to the interest acquired by the appellant from his purchase of the property. For want of record, this interest was cut off by the appellant's purchase. The appellant did not, however, perfect his acquired title by recording his deed until after the respondents had begun an assertion of their interest, nor did he appear in the action in which that interest was sought to be asserted. To say that his interest was not cut off, therefore, requires the declaration of a new principle; it must be declared that no paramount title can be cut off by a procedure under the statute of notice.

No case, in so far as we are advised, has gone to that extent, and seemingly the statute should not be so construed. Between two innocent persons, one of whom must suffer a loss, no matter which view of the statute is taken, there should at least be a weighing of the equities, and that equity be allowed to prevail which favors the person least in fault. In the action before us, unquestionably the greater fault lies with the appellant. In the first place, he was negligent in failing to record his deed until the lapse of so long a time. In the second place, he had the last call to examine the record. He could but know, since he allowed eight days to elapse between the time he took his conveyance and the time he filed it for record, that adverse interests could intervene, and had he examined the record at that time he would have learned of the claims made by the respondents and could, by making known his claims, have prevented the respondents from waging a fruitless suit, or at least prevented a judgment which will be rendered fruitless if his claim is now permitted to prevail. On the other hand, the respondents had no call to examine the record subsequent to the commencement of their action. As the record was then free from opposing claims, and as they then put notice of their own claims upon the record, they had the right to rest upon the assurance that subsequent claims would either be brought to their notice or would be barred by a successful prosecution of their action because of failure to assert them.

But appellant contends that the statute is incapable of the construction the foregoing conclusion implies. He calls attention to the concluding clause of the statute, the clause to the effect that a subsequent purchaser or incumbrancer is bound by the proceedings subsequent to the filing of the notice of pendency of the action only to the same extent he would be bound if he were a party to the action, and argues that, had he appeared and set up his claim, the court would have given judgment not against him, but against the Roots only, and hence the judgment entered can have no more

effect, inasmuch as he was not a party. But we cannot think this the meaning of the statute. We think it means that he is bound by the judgment actually entered to the same extent as if he were a party to the action. The question, therefore, is not would the court have entered a different judgment had he been a party to the action, but to what extent would he have been bound by the judgment actually entered had he been such a party? This is the construction given the statute in *Merrick v. Pattison, supra,* as is shown by the concluding sentence of the clause quoted from the opinion.

It is said, however, that this construction of the statute is not in accord with the rule which denies effect to the statute in the instance where the plaintiff has notice of the unrecorded superior title. But the rule in such a case is founded in another principle of equity—the fraud implied in the act of the plaintiff in failing to make known to the court a superior outstanding title of which he has knowledge, the principle that equity favors the innocent, not the guilty.

These considerations require an affirmance of the judgment of the court below. It is so ordered.

ELLIS, C. J., MOUNT, PARKER, and HOLCOMB, JJ., concur.