256 P.2d 553

KLEEMANN v. SHERIDAN.

No. 5652.

Supreme Court of Arizona.

April 20, 1953.

Rehearing Denied May 19, 1953.

Moore & Moore, of Phoenix, for appellant.

Langmade & Sullivan, of Phoenix, for appellee.

PHELPS, Justice.

This is an appeal from a judgment of the superior court of Maricopa County in favor of defendant-appellee and against plaintiff-appellant.

The facts are that appellant Florence A. Kleemann and Fannie E. Sheridan were sisters; that on May 9, 1932, appellant and Mrs. Sheridan rented a safety deposit box from the Valley National Bank and jointly signed a contract of lease with the bank

which insofar as material to the instant case, provides:

"* * * It is hereby declared that all property of every kind at any time heretofore or hereafter placed in said box is the joint property of both lessees and upon the death of either passes to the survivor. Each shall have full access to and control of the contents of said box without further authority. * * *"

The entire contents of the box were the separate property of deceased and consisted of:

1. Warranty deed to Fannie E. Sheridan, a widow, Lot 5, Block 2, Hamilton Subdivision in the City of Phoenix.

2. Warranty deed to Fannie E. Sheridan, a widow, to the west 87 feet, Lot 4, Block 8, Brills Addition as amended.

3. Administratrix's deed to Fannie E. Sheridan, a widow, to Lot 58, Highland Addition, Maricopa County.

4. A $500-mortgage note and mortgage from LeRoy Peyton to Fannie Sheridan, mortgagee.

5. A $175-mortgage note from Raymond C. and Joan Lee Boles and mortgage to Fannie Sheridan, mortgagee.

6. A $150 American Express Traveler's check signed Fannie E. Sheridan.

7. $2500 Postal savings notes, Fannie E. Sheridan.

8. A $1000 U. S. Savings Bond, Series E, registered—Fannie E. Sheridan.

9. A $100 U. S. Savings Bond, Series E, registered Fannie E. Sheridan, P. O. D. Florence A. Kleemann.

10. A $225 U. S. Savings Bond, Series E, registered Fannie E. Sheridan, P. O. D. Lawton G. Sheridan.

11. 44 shares Am. Tel. & Tel. capital stock, registered Fannie E. Sheridan.

12. 130 shares Central Arizona Light & Power Co., Common—registered Fannie E. Sheridan.

Appellant contributed nothing whatever to the personalty contained in the box.

A few days prior to her death Mrs. Sheridan made a will in which she made bequests to appellant and Lawton G. Sheridan in the sum of $5,000 each and to three other persons in the sum of approximately $3,000 each, and provided that all the rest and residue of her property was to be divided equally among the five legatees. Appellant was present at the Sheridan home when the will was drawn and made suggestions to her sister as to its provisions. She was also present the day before the death of deceased and suggested a codicil naming an executor of the estate. Thereupon deceased named appellant as executrix of her estate.

During decedent's lifetime or thereafter appellant never applied to the bank to exercise her right of access to the safety

deposit box and necessarily never withdrew anything therefrom. Following her sister's death at the time the inventory of the box was being taken appellant turned the key to the box over to Lawton G. Sheridan, son of deceased, to whom she has relinquished her right under the will to act as executrix of her sister's estate and according to evidence received over the objection of appellant, then stated to him she did not want to have anything to do with the safety deposit box and signed a document furnished by the bank relinquishing her right to access to the box.

Lawton G. Sheridan thereafter applied to the probate court of Maricopa County for letters of administration with will annexed and after his appointment proceeded with the probate of the estate of deceased. He paid all specific legacies provided to be paid under the terms of the will including the $5,000 bequest to appellant.

On January 26, 1951, appellant filed this cause of action against appellee as administrator with will annexed of the estate of deceased asking that she be adjudged to be the owner of all the personal property contained in said safety deposit box at the time of the death of decedent. She makes no claim to the ownership of the real property belonging to deceased as evidenced by the deeds inventoried in the safety deposit box.

Appellant presents for our consideration five assignments of error:

1. That the court erred in denying appellant's motion for summary judgment for the reason that there existed no genuine issues of any material fact.

2. The court erred in rendering judgment for defendant for the reason that the uncontradicted evidence shows appellant was the owner of all of said property.

3, 4. The court erred in admitting exhibits I and II in evidence for the reason that such exhibits had no bearing upon the issues of the case.

5. The court erred in denying appellant's motion to strike certain testimony of appellee for the reason that such testimony violated the parol evidence rule.

■ Before entering upon a discussion of the points raised by appellant it will perhaps be pertinent to briefly recount the common-law essentials to create a joint tenancy. They are unity of time, unity of title, unity of interest, unity of possession. Such tenancy could not arise by descent or other operation of the law but may arise by grant, devise or contract. Of course the right of survivorship is inherent in the joint tenancy estate and without which joint tenancy does not exist. At first joint tenancy under the common law involved only interest in land but at an early date it was recognized as applying to personal property as well. At common law a person could not make a conveyance to himself. An attempt to convey land to himself and to another resulted in a conveyance of only

one-half of the property to the other and the grantor still held his moiety under his original title, thus destroying two essentials of joint tenancy, unity of time and of title. The result of such attempt was to create a tenancy in common.

The same rule would seem to logically apply to personal property and is the rule of law relating to both real and personal property in many of the states of the Union including Maine, Illinois, Wisconsin and Nebraska but the majority of the state courts have held that the common-law concept of the four unity essentials should give way to the intention of the parties and that a joint tenancy may be created by a conveyance from one to himself and another as joint tenants. California has passed a law making the rule applicable to husband and wife.

We have apparently aligned ourselves with the majority rule insofar as personal property, the title to which passes by delivery, is concerned. Where title to property, real or personal, vests only by some form of conveyance, we must either resort to the fiction of the common law and convey to a third person and have such third person convey to the grantor and the other joint tenant or decline to recognize the common-law concept of the four unities in a joint tenancy.

 Another characteristic of joint tenancy is that it is not testamentary but "is a present estate in which both joint tenants are seized in the case of real estate, and possession in case of personal property, per my et per tout," that is, such joint tenant is seized by the half as well as by the whole. The right of survivorship in a joint tenancy therefore does not pass anything from the deceased to the surviving joint tenant. Inasmuch as both cotenants in a joint tenancy are possessors and owners per tout, i. e., of the whole, the title of the first joint tenant who dies merely terminates and the survivor continues to possess and own the whole of the estate as before. The interest of the other cotenant terminated by death transfers nothing, but his interest is merely divested by "its own inherent nature and limitation." Strout v. Burgess, 144 Me. 263, 68 A.2d 241, 12 A.L. R.2d 939.

In the light of the above common-law characteristics of a joint tenancy we will proceed to a consideration of appellant's assignments of error 1 and 2. These assignments present the questions, (1) did the court err in denying appellant's motion for summary judgment? and (2) did it err in entering judgment for appellee at the close of the case?

 This must depend upon whether this court is going to maintain the four-unity concept of the essentials necessary under the common law to create a joint tenancy or whether it will follow the majority rule in the United States and hold that the four unities must give way to the intention of the parties.

█ Counsel for appellant make no claim to the real property belonging to deceased, deeds to which were kept in the safety deposit box in question and were there at the time of the death of deceased. There can be no doubt of the correctness of this position. Deeds are mere evidences of title and when title has vested in the grantee by delivery of the deed to him, the title would continue to remain in. the grantee even though the deed conveying the same were destroyed.

With the exception of two small Government bonds, Series E, registered in the name of Fannie E. Sheridan, one—P. O. D. Florence Kleemann, and the other—P. O. D. Lawton E. Sheridan, the remainder of the contents of the box consisted of certificates of stock, bonds, notes and mortgages and other evidences of ownership of personal property, all of which are transferable only by endorsement, assignment or other means of transfer but not by delivery.

We held in Brown v. Navarre, 64 Ariz. 262, 169 P.2d 85, 92, that a contract identical with the one here under consideration, created a joint tenancy between the donor and donee and that money found in the box, the ownership of which, of course, passes by delivery, became the property of the surviving cotenant upon the death of the other joint tenant. The facts in that case were that Leonce Navarre had leased a safety deposit box from the Phoenix Savings Bank & Trust Company and later under a new contract of lease, added the name of Mabel Riddle thereto. The box contained at the time of the death of Navarre, so far as we are concerned here, the sum of $6,400 in cash placed in there by Navarre and which was his sole and separate property. There were some insurance policies and some war bonds in the safety deposit box belonging to the said Mabel Riddle. Ernestine Navarre who was the second wife of Leonce Navarre and a sister of Mabel Riddle claimed the right to open the safety deposit box and to possession of the $6,400 by virtue of her "appointment as deputy" by Mabel Riddle. The only evidence of the manner in which the contents of the box were held by the bank were the provisions incorporated into the contract of lease which, as stated above, were identical with the provisions of the lease in the instant case. These facts were alleged in the pleadings and upon motion of the defendant Ernestine Navarre, summary judgment was granted in her favor. The action was instituted by children of the deceased against Mrs. Navarre for the recovery of the $6,400. The court said:

"The uncontradicted pleadings show that neither Navarre nor Riddle had a greater interest in the property than the other but their interest [was] one and the same; such pleadings show that the interest commenced at the same time; that the property was held by one and the same undivided possession; that the said parties were not

tenants in common but were joint tenants because their joint ownership grew out of the written contract executed by both parties declaring joint ownership with right of survivorship and thus unequivocally established their joint ownership and intention."

The substance of the above statement is that the lease with the bank supplied the four unities of time, title, interest and possession in the donor and donee. In retrospect we believe the court intended to say that the common-law technical requirements of the four unities of time, title, interest and possession must give way to the intention of the parties, and in so holding, to align this court with the majority rule.

The first question for our consideration then is, will this court extend the application of the joint tenancy rule to personal property the title to which can be transferred only by endorsement, assignment or other means of transfer. All of the authorities seem to agree that joint tenancies may be created by contract as well as by deed or devise or by gift inter vivos. A primary essential, however, in case of contract, grant or gift inter vivos is that it effects a transfer of the interest of the grantor, donor, etc., in praesenti. It would seem to follow, therefore, if we adhere to the majority rule that there is no logical reason why the contract here under consideration would not furnish the basis to enforce the transfer of personalty,

the title to which passes by endorsement or assignment.

We have examined a number of cases involving stocks, bonds and other securities in safety deposit boxes and in none of them has it been suggested by either counsel or the court that such securities could not be transferred in this manner and in all of them it was held that a joint tenancy was created by one joint tenant in favor of his cotenant, and that the survivor was entitled to such contents as against the personal representative of deceased's estate. A very recent case arising in this jurisdiction is the case of Greenwood v. Commissioner of Internal Revenue found in 9 Cir., 134 F.2d 915, 917, in which the ownership of the contents of a safety deposit box in a Tucson bank consisting of various and sundry bonds and securities were in issue. The case was tried in the Federal Court and the Ninth Circuit Court of Appeals held that the following language created a joint tenancy:

" 'We, the undersigned, joint renters * * *, hereby declare and represent that we own as joint tenants, with the right of survivorship, all the property of every kind or character now within said box and that all property which may be deposited therein by either or any of us shall be and is owned by us as such joint tenants' ".

and in that case bonds and securities which could only be transferred by endorsement or assignment were held to pass to the sur-

vivor. The court pointed out that the weight of authority is that the technical view requiring the four unities of time, title, interest and possession should give way to the intention of the parties. See also Edmonds v. Commissioner of Internal Revenue, 9 Cir., 90 F.2d 14.

In the case of Matthew v. Moncrief, 77 U.S.App.D.C. 221, 135 F.2d 645, 648, 149 A.L.R. 856, Justice Vinson, now Chief Justice of the Supreme Court of the United States, writing the opinion for the court, stated that he had made a rather exhaustive study of cases involving the creation of joint tenancies in bank or building and loan deposits wherein the only evidence of the joint tenancy was found in an instrument, either of the deposit slip signed by both parties or some other instrument of their intention to create a joint tenancy with right of survivorship. In all of which the joint tenancy was sustained where the intention was manifest from the instrument itself and parol evidence was held to be not admissible to show a different intention where the intention is expressed in the instrument in plain terms that the deposit is the joint property of both and upon the death of either, to go to the survivor. The court further states that:

" * * * In many of these decisions, the expressed rationale has been that the deposit card is a contract or novation between the bank and both depositors, and that the donee-survivor takes not only as donee, but under the binding agreement negotiated between the bank and himself. * * * "

In the case of Young v. Young, 126 Cal. App. 306, 14 P.2d 580, 583, William D. Young and Emily B. Young, his wife, rented a safety deposit box in which bonds and securities were held under the following declaration:

" * * * 'We hereby declare that all the contents of said safe now or hereafter placed therein, are our joint property and that the title and right of ownership thereto and to the whole thereof rests in the survivor of us as his or her separate property. * * * ' "

The court held without comment as to the necessity of assignment or endorsement to transfer ownership that this instrument created a joint tenancy.

The language employed by the parties herein is clear and unambiguous and needs no extrinsic evidence to clarify it. We believe it clearly shows an intention to create a joint tenancy under the rule of the majority decisions. Under such circumstances parol evidence is not admissible and the court erred in admitting parol evidence to show an intent contrary to the clear language of the instrument itself. It follows that the court erred in denying summary judgment for the appellant and in rendering judgment thereafter for appellee.

The judgment of the lower court is reversed with directions to enter judgment for the appellant.

STANFORD, C. J., and LA PRADE and UDALL, JJ., concur.

WINDES, J., did not participate in this decision.